Black, J.
This is a civil action brought on December 11, 1980 by the plaintiffs, Jerald S. Savage and Cheryl Savage (husband and wife), against Orlando A. DiGiampietro, et al, as members of the Zoning Board of Appeals of the Town of Stoughton, (hereafter referred to as “the Board”), under the provisions of G.L.c. 40A, § 17, seeking annulment ofthe board’s decision dated November 21, 1980 in Case #1347, granting a variance for construction of a single family dwelling at a location shown as a portion of Lot 29 on the Stoughton Assessor’s Plan 73, Old Maple Street, Stoughton, Massachusetts. The decision appealed from was filed in the Office of the Stoughton Town Clerk on November 21, 1980 and this action was commenced on the twentieth and last day of the appeal period specified in the statute. The answers filed on behalf of the respective defendants generally denied the plaintiff s allegation that the decision of the Board in granting the variance was in excess of its authority or was in violation of G.L.c. 40A, § 10.
The case was tried upon an Agreed Statement of Fact and the court reaffirmed the decision of the Board, but without making any specific findings relative thereto. The decision of the court was dated November 5, 1981. The time for filing a Draft Report was extended upon motion duly filed and allowed. The plaintiff s Draft Report was signed by the trial judge on January 12, 1982. It should be noted, however, that the trial judge's Finding #2 was amended on January 7, 1982. The Agreed Statement of'Facts together with all documentary exhibits are annexed to and made a part of the Report of this case.
A review of the appellate record discloses that on February 23, 1960, John C. Webster, Jr. of Stoughton, Executor under the Will of Rachael Adelaide, by power conferred by the Norfolk County Probate Court, dated December 31, 1959 (Norfolk Probate Docket No. 145398), and under a license to sell real estate, conveyed certain parcels of real estate to Milton W. Bishop, Jr., and Doris E. Bishop, husband and wife, as tenants by the entirety. The fourth parcel in that conveyance contained approximately seven (7) acres. The parcel which is the subject matter of this case constitutes 5,742 square feet of the said seven (7) *175 acres.
On September 8, 1970, as a result of a Town Meeting, the Stoughton Zoning By-Law and Map, which had been adopted in 1964, was totally revised. As a consequence of the 1970 rezoning, most of the aforementioned seven (7) acre lot was changed from residential to industrial use. That portion of the lot that remained in the residential zone (5,742 square feet) became the subject of the application for the variance.
Under the amended Zoning By-Law, the minimum lot area required for construction of a residence is 20,000 square feet. The minimum frontage required was established at 100 feet with a minimum width of 125 feet and a minimum depth of 140 feet. The minimum set-backs were established as 40 feet on the front, 20 feet on the sides, and 40 feet at the rear.
On July 22, 1980, the petitioner, Charles R. Penny, entered into a Purchase and Sale Agreement with the then owners of the lot in question, Milton W. Bishop, Jr. and Doris E. Bishop, calling for a purchase price of $8,500 subject to the provisions of the existing building and zoning laws, but no date, time or place was designated for delivery of the deed. On September 17, 1980, Milton W. Bishop et ux. conveyed the entire seven (7) acre parcel (including the lot in question), to the Modem Continental Construction Co., Inc., for a stated consideration of $76,000.00. On September 18, the Bishops and Modern Continental Construction Co., Inc., entered into a Purchase and Sales Agreement providing for the repurchase of the lot in question for a stated consideration of one ($ 1.00) dollar within six months upon fourteen days written notice from the buyer to the seller that the buyer had obtained all necessary permits and approvals. The petitioner, Charles R. Penny, alleging that he is a party in interest, filed a request for a variance with the Stoughton Zoning Board of Appeals to build a single family dwelling on the lot.
A public hearing was held on the application for a variance at the Town Hall Auditorium on October 2, 1980, at 8:00 p.m. A review of the record of that hearing, which is appended to the Statement of Agreed Facts, discloses that the petitioner sought to build a residence on the lot in question. The dimensions of the lot, as proposed, were 5,742 feet in total area, with a 35 foot width, and a depth of 118.5 feet. The proposed structure would be located on the lot with the following setbacks: front - 54 feet; side - 7 and 0 feet, and rear - 12 feet. The petitioner pointed out that the request for the variance had been necessitated by the Town’s rezoning the area leaving only the 5,742 foot lot in the residential zone. Several members of the board noted that the lot would be unable to support a leaching field or septic tank and it was pointed out that the minimum lot size was then 20,000 square feet with a minimum width of 125 feet, a minimum frontage of 100 feet, and a minimum depth of 140 feet. Discussion also revolved around the placement of the leaching field or septic tank on adjacent property and location of a well. •
The appellants appeared at the hearing in opposition to the application and argued that it should not be granted for a variety of reasons. It was especially noted that allowance of the application would defeat the purpose and intent of the by-law because the lot does not even come close to the minimum requirements for a residential lot.
The hearing was continued until October 16, 1980 at 9:00 p.m. in order to afford Mr. Penny the opportunity to acquire additional property.
On the continuance date, the petitioner indicated that he could purchase additional abutting property, but had no written agreement with respect thereto. The appellants, through counsel, inquired as to whether service-type vehicles *176 could gain access to the property through its 7.3 feet frontage (although the record is not dear on the point, presumably the question related to ambulances, fire trucks, and the like). A question was also raised as to the standing of the petitioner since it appeared that he had no enforceable agreement with respect to the parcel in question. (It would appear that this challenge was predicated on the fact that after the execution of the Purchase and Sale Agreement between the Bishops and Mr. Penny, the Bishops conveyed the entire 7 acres to the Modern Continental Construction Co., Inc. Subsequently, the Bishops obtained a conditional right to repurchase that portion of the seven acres which is the subject of this appeal.) No response to this inquiry was offered by Mr. Penny. Another person attending the hearing expressed deep concern over the extent of the deviations from the minimum requirements of the zoning by-law in terms of lot size, set-backs, etc. Mr. Penny responded by pointing out that the Town had established the lot size and the problems attendant thereto by rezoning the area. After considerable discussion, the hearing was further continued until November 6, 1980 at 8:30 p.m.
On November 6, 1980, Mr. Penny reported that he had received assurances from Modern Continental Construction Co., Inc., that easements could be obtained, as necessary, for a septic system. Mrs. Washburn, the Assistant Town Engineer, emphasized that a 660’ leaching field would be required for the home proposed by Mr. Penny and that there would have to be a minimum of 100 feet between the leaching field and any well located on the property. Following a brief discussion, the Zoning Board of Appeals voted 4-1 to grant variance on the grounds that:
(a) There were conditions and circumstances unique to the lot in question, the structure or building that do not apply to neighboring lands, structures or buildings in the same district;
(b) Strict application on the provisions of the Zoning By-Law would deprive the applicant of reasonable use of the land, structure or building in a manner equivalent to the use permitted to be made by other owners of neighboring lands, structures or buildings in the same district. It was noted that the lot in question was an undersize lot so, that strict application of the Zoning By-Laws would deprive the applicant of reasonable use of the land.
(c) The unique conditions and circumstances were not the result of actions of the applicant taken subsequent to the adoption of the Zoning By-Law. The unique circumstances were created by the Town of Stoughton in adopting the 1970 re-zoning; and,
(d) The relief, if granted, would not cause substantial detriment to the public good or impair the purpose and intent of the Zoning By-Law.
The following conditions were imposed on the granting of the variance:
1. That the petitioner obtain a minimum easement of 8 feet from Modern Continental Construction Co., Inc. along the entire length of the lot;
2. That the petitioner seek easements from Mr. Gesner (another abutter) as necessary; and,
3. That the variances are approved according to the plans submitted dated August 27, 1980, by Gale Engineering Company, Inc.
The decision of the Zoning Board of Appeals was filed with the Town Clerk on November 21, 1980.
As previously noted, the case was tried upon a statement of agreed facts, together with all the documentary exhibits annexed thereto. After reviewing the same, the court reaffirmed the decision of the Zoning Board of Appeals.
Simultaneously with the filing of the Statement of Agreed Facts, the *177 plaintiffs-appellants filed the following request for rulings. (The court’s action thereon was as indicated):
1. Allowed.
2. Denied — as evidence does warrant a finding for the Defendants.
3. Denied — as Court has found for the Defendants on all of the credible evidence.
4. Denied — as Court has found for the Defendants on all of the credible evidence.
On appeal, it is the duty of the trial judge to hear the matter de novo and to determine the legal validity of the decision of the Zoning Board upon the facts found by him. See Josephs v. Bd of Appeals of Brookline, Mass. [1972] 285 N.E. 2d 436). In making his findings, the judge is not allowed to give the board’s findings or decision evidentiary weight, nor may he make findings, which, in substance, constitute a “mere repetition of the statutory words.” (See also Lawrence v. Board of Appeals of Lynn, 336 Mass. 87 [1957].) Since, in this case, the matter was submitted to the trial judge on an agreed statement of facts, or case stated basis, there was no requirement that the judge make subsidiary findings of fact. However, in our opinion, it would have been preferable had the trial judge made findings which would have indicated that in determining the validity of the Zoning Board’s decision the various statutory requirements had been considered and the basis upon which the decision was being affirmed. This would be particularly true in those cases where the trial judge draws various inferences from facts as stipulated, inasmuch as in the absence of written findings an Appellate Court would be unable to determine what, if any, inferences were, in fact, drawn by that judge to support his decision.
We would also note that request for rulings have no standing in a case heard upon an agreed statement of fact (See NOLAN, MASS PRACTICE, VOL. 98, at 645; PERLIN & CONNORS, HANDBOOK OF CIVIL PROCEDURE IN THE MASS. DIST. CTS. [1980];, Rock v. City of Pittsfield, 316 Mass. 348 [1944] v. Commonwealth, 303 Mass. 80 [1939]; Simmons v. Cambridge Savings Bank, 346 Mass. 327 [1963]). The obligation of the Appellate Division is to determine whether the decision of the trial court was right on the facts stated and the proper inferences that might be drawn therefrom (See Rock v. City of Pittsfield, supra.
We find that decision of the trial court was in error and must be reversed. Aside from any other other consideration, such as hardship, special circumstances, etc., we conclude that due to the magnitude of the disparity between the minimum zoning requirements applicable to the lot in question and the actual dimensions of the said lot, the variance as applied for cannot be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of the zoning by-law. A comparison of some of the minimum zoning requirements and the actual dimensions of the lot is as follows:
Minumum Zoning Requirements Actual Dimensions of Lot
Lot frontage 100 feet 7.30 feet
125 feet 35.00 feet Lot width
140 feet 132.43 feet Lot depth
Lot area 20,000 feet 5,742 square feet
Side setback 20 feet 0.00 feet
Rear setback 40 feet 12.00 feet
*178 It is obvious that the 7.3 foot frontage is so narrow that it would be difficult, if not impossible, for an emergency vehicle such as an ambulance or fire engine to gain entrance to the property. The total lot size is slightly more than 25% of the minimum lot size required and from the record it would appear that other lots in the immediate area are at least 20,000 square feet in size, if not substantially larger. There would be no set-back on at least one side of the property and the lot is totally incapable of supporting a septic system.
It is ordered that the judgment of the trial court for the defendant be vacated and that judgment be entered for the plaintiffs.*

In the case of Walker v. Board of Appeals of Harwich, 388 Mass. 42, the Supreme Judicial Court ruled that the Appeals Court, not the Appellate Division of the District Court, has jurisdiction to hear appeals on zoning cases tried in the District Court. However, the court indicated that its determination issue was to be applied “prospectively only”. We construe this to mean that no further zoning board of appeals cases may be filed with the Appellate Division. Since this case was fully heard and decided prior to the decision in the Walker case, we assume that we should proceed to render our decision.