Kern, J.
Plaintiffs filed a civil action challenging the Leominster Planning Board’s approval of one special permit and two site plans for a proposed development project in Leominster, Massachusetts. Plaintiffs ask this court to vacate the Board’s decision alleging: (1) Counts I-III, the decisions granting the special permit and site plan approvals are arbitrary and capricious and the Board’s decisions lack specific findings; (2) Count IV, the Board’s choice of consulting firm to provide traffic studies violated the Conflict of Interest Law; (3) Counts V-VIII, the Board violated the Open Meeting Law; (4) Count IX, the Board violated the Notice Requirement; and, (5) Count X, the plaintiffs were deprived of their due process rights.
Defendants now move for summary judgment on all counts. The plaintiffs oppose the motion and move for summary judgment on Counts I, and IV-VIII. For the following reasons Defendants’ Motion for Summary Judgment as to Counts II, III, IV, IX and X is ALLOWED; Defendants’ Motion for Summary Judgment as to Counts I, V, VI, VII and VIII is DENIED; and Plaintiffs’ Cross-Motion for Summary Judgment as to Count I and Counts IV-VIII is DÉNIED.

Background

The following facts are undisputed except as noted. On November 24, 2003, the Planning Board issued a written decision granting one special permit and two site plan approvals to New England Development for a retail development. The proposed development consists of two different sites, the South Site Project and the North Site Project. The special permit and site plan approval for the South Site Project allows the construction of a mixed-use development consisting of approximately 325,000 square feet of mixed-use space and parking on approximately 36 acres of land. This land is located south of Route 117 in Leominster, near the Interstate 190 interchange. The site plan approval for the North Site Project allows for the development of approximately 176,000 square feet of retail space and parking spaces on approximately 21 acres of land. The North Site is located north of Route 117, near Interstate 190. The plaintiffs in this case are residents of one of two condominium complexes, Wildwood Condominiums and Liberty Commons Condominiums. The Wildwood and Liberty Commons condominiums are located near Route 117 and Interstate 190. Residents of these complexes access their homes from Route 117 and Interstate 190 by traveling on Willard Street. Plaintiffs brought this action against New England Development, Leominster Properties, Inc., the Board and its members to challenge the decisions.
Standing
Defendants submit a traffic impact and access study prepared by H.W. Lochner which asserts the *382 plaintiffs will not suffer any particularized harm and, therefore, do not have standing. The plaintiffs counter with a traffic study conducted by Jeffrey S. Pechulis, traffic analyst for JSP Land Development. This study asserts the project will generate increased traffic and compromise pedestrian safety on Routes 117 and Interstate 190 and Willard Street. This increased traffic will particularly impact the residents of the Wild-wood and Liberty Condominium Associations because, unlike other citizens, plaintiffs cannot avoid increased traffic since they need to travel on Willard Street in order to access their homes. Further, the Pechulis study maintains an increase in traffic will particularly impact the plaintiffs because the proposed development will increase traffic on Route 117 and Interstate 190, the only convenient means for the plaintiffs to access their property.
Conflict of Interest
The Board utilized the services of Vanesse Hangen Bruslin, Inc. (Vanesse) in considering whether to grant the special permit and site plan approvals. Vanesse was simultaneously involved in a business relationship with New England Development at the time it provided consulting services to the Board. New England Development’s executive vice president and controller states in his deposition testimony that Vanesse provided services to New England Development for a project in Portland, Maine through New England Development’s silent partner, Packard Development. Vanesse provided these services to Packard Development at the same time it was acting as the Board’s traffic consultant. Furthermore, New England Development and Vanesse are partners in the development at issue in this case.
Open Meeting Law
The minutes of the Board reflect that the Board approved a site plan for a mixed-use development on October 7, 2003. The order of the Board on November 27, 2003 reflects a site plan approval for the North Site in an area zoned for commercial use. In his affidavit, John Souza, the chairman of the Board, states that no public meeting regarding New England Development’s applications took place after October 7, 2003. There is no record of a public meeting or vote of the Board that accounts for the change from mixed-use to commercial use.
Due Process and Notice
On May 6, July 8, August 19, and September 2, 2003, the Board held public hearings on New England Development’s special permit and site plan approval applications. The Board provided notice to the Wild-wood Condominium Association and the Liberty Commons Condominium Association but did not provide notice to the individual unit owners. Despite the lack of notice to individual unit owners, at least one of the plaintiffs or an attorney from plaintiffs’ attorney’s law firm was present at each of the hearings.
Special Permit Decision
On November 24, 2003, the Board detailed its findings in its special permit decision. The findings of the Board used the language of the Leominster zoning ordinance in conjunction with an explanation as to how the development will comply with the ordinance. The decision also details a list of conditions upon which the special permit is contingent.

Discussion

Summary judgment is appropriate where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving parly has no reasonable expectation of proving an essential element of the case at trial. Flesner v. Technical Communications Corp., 410 Mass 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17. In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.RCiv.P. 56(c). The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertion of disputed facts do not defeat the motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Do Plaintiff's Have Standing Under G.L.c. 40A?
Defendants assert that plaintiffs lack standing under G.L.c. 40A because the proposed zoning relief will not cause the plaintiffs a particularized harm. To have standing plaintiffs must be “aggrieved persons” under G.L.c. 40A, §17. Parties in interest enjoy a rebuttable presumption that they are aggrieved persons under the statute. Id. Parties in interest are those that are entitled to notice of zoning board of appeals hearings. G.L.c. 40A, §11. They include abutters and abutters to abutters within 300 feet of petitioner’s property line. Id. Plaintiffs contend they are abutters to abutters within 300 feet and, therefore, are entitled to a rebuttable presumption that they are aggrieved persons under the statute. The defendants dispute this statement of fact. Even if the plaintiffs are not *383 abutters to abutters within 300 feet they may have standing in this case if their claimed injury is particular to them, not merely reflective of harm suffered by the community. See Nickerson v. Zoning Board of Appeals of Newburyport, 421 Mass. 719 (1996).
While parties in interest enjoy a rebuttable presumption as persons aggrieved, this presumption recedes when the defendants challenge the presumption with evidence that plaintiffs are not aggrieved. Valcourt v. Zoning Board of Appeals of Swansea, 48 Mass.App. 124, 127 (1999). In the present case, the defendants challenge the presumption by offering the Lochner traffic study which asserts that plaintiffs will suffer no particularized harm. The burden, therefore, switched to the plaintiffs to prove standing by demonstrating that the proposed zoning relief will cause a particularized harm. See Barvenik v. Board of Alderman of Newton, 33 Mass.App.Ct. 129, 131-32 (1992). To meet their burden, the plaintiffs must put forth credible evidence that they will suffer an injury that is not speculative. Barvenik, 33 Mass.App.Ct. 129 at 132. When the presumption recedes the question of standing is decided on “all of the evidence with no benefit to the plaintiffs from the presumption.” Barvenik v. Aldermen of Newton, 33 Mass.App.Ct. 129, 131 (1992). A party still “may qualify as a ‘person aggrieved’ if he has put forth credible evidence to substantiate a claim of injury to his legal rights which is more than speculative.” Nickerson v. Zoning Board of Appeals of Raynham, 53 Mass.App.Ct. 680, 681-82 (2002).
While the term “aggrieved persons” should not be construed narrowly, in order to have standing the plaintiffs must establish, “by direct facts and not by speculative personal opinion — that [their] injury is special and different from the concerns of the rest of the community. [They] must show that [their] legal rights have been, or likely will be, infringed or [their] property interests adversely affected.” Barvenik, 33 Mass.App.Ct. at 132; see Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204 (1957).
In evaluating the evidence put forth by the plaintiffs, “a review of standing based on ‘all of the evidence’ does not require that [this court] ultimately find a plaintiffs allegation meritorious ... Rather, the plaintiff must put forth credible evidence to substantiate his allegation. In this context, standing becomes essentially a question for the trial judge.” Marshalian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719 (1996). Plaintiffs must make a showing that they will be injured in a manner that differs from injuries suffered generally by others throughout the zone. Id.
Considering all of the evidence in the summary judgment record, this court finds that the plaintiffs are aggrieved persons under the statute. Plaintiffs put forth credible evidence in the form of a traffic study demonstrating that the proposed zoning will result in significantly increased traffic and compromise pedestrian safety in a manner that negatively and particularly impacts them. Concerns of increased traffic are sufficient to show standing if the plaintiffs can demonstrate they will suffer more harm than others. See Marashlian, 421 Mass. at 721 (holding where the plaintiffs’ fears about increased traffic and reduced parking were neither speculative nor remote, plaintiffs have standing); see also Bedford v. Board of Trustees of Boston University, 25 Mass.App.Ct. 372, 377 (1988).
Pechulis’s traffic study demonstrates that the plaintiffs will suffer a particularized harm because the proposed projects will increase the traffic on Willard Street.[1] Plaintiffs must travel on Willard Street in order to access their homes whereas other residents of Leominster may avoid these streets. Further, the project will impact Route 117 and Interstate 190 and plaintiffs have no other convenient means of accessing their property. Thus, because the plaintiffs cannot avoid the traffic, the harm is particularized.
Because plaintiffs have offered evidence of a plausible claim of particularized harm they have standing under G.L.c. 40. Therefore, the defendants’ Motion for Summary Judgment on the issue of standing is denied.
II. Does the Court Have Jurisdiction Over Counts II and III, Alleged Violations of the Zoning Ordinance?
Defendants argue the court lacks jurisdiction over Counts II and III. These counts allege the Board violated the Leominster zoning ordinance by granting the site plan approvals.
General Law c. 40A, §17 provides that the Superior Court has jurisdiction to hear appeals from zoning decisions when the permit granting authority has taken a final action. In the present case, the Board granted two site plan approvals that are a part of the process for securing a building permit. When site plan approvals are required in the process of obtaining a building permit, the approval of the site plan is not a final action but merely a prerequisite in obtaining a building permit. Dufault v. Millenium Power Partners, L.P., 49 Mass.App.Ct. 137, 142-43 (2000). Plaintiffs do not have standing to appeal until the building permit is approved or denied. See St. Boltoph Citizen’s Committee, Inc. v. Boston Redevelopment Authority, 429 Mass. 1, 9 (1999). Under G.L.c. 40A, §17, this court has no jurisdiction over Counts II and III because plaintiffs have not exhausted their administrative remedies.
Plaintiffs agree the court has no jurisdiction over these claims under G.L.c. 40A, §17. They argue they are bringing these claims as alleged violations of G.L.c. 39, §§23A-23C, the Open Meeting Law, and, G.L.c. 268A, the Conflict of Interest Law. This contention is without merit. In Counts II and III, plaintiffs claim the Board’s approvals of the site plans for the North Site and South Site violate the ordinance and that each approval: “lacks the necessary findings, is arbitrary *384 and capricious, an abuse of discretion, exceeds the Board’s authority, and is not in accordance with law.” This language sets out the standard for challenging the Board under G.L.c. 40A, not the Open Meeting or Conflict of Interest laws. Furthermore, plaintiffs allege violations of the Open Meeting Law and Conflict of Interest Law separately in Counts IV though VIII. Defendants’ Motion for Summary Judgment on Counts II and III is allowed.
III. The Exclusivity Provision of G.L.c. 40A, Section 17 as Applied to Counts IV, V, VI, VII, VIII, andX.
Defendants also move for summary judgment on the grounds that the exclusivity provision of G.L.c. 40A, §17 bars the claims set forth in Counts IV, V, VI, VII, VIII, and X. These counts seek relief for alleged violations of the Conflict of Interest Law; the Open Meeting Law; and due process. Defendants argue that even if the exclusivity provision of G.L.c. 40A, § 17 does not bar these claims, each of these claims fails as a matter of law. Plaintiffs’ Cross-motion for Summary Judgment asserts they are entitled to relief on these claims as a matter of law.
A. Are the Parties Entitled to Judgment as a Matter of Law on the Conflict of Interest Claim?
Plaintiffs contend that the Board’s reliance on Vanesse’s consulting services in considering and approving the special permit and two site plans for New England Development’s projects violates the Conflict of Interest Law, G.L.c. 268A because Vanesse was involved in a business relationship with New England Development at the time Vanesse provided consulting services to the Board.
Further, plaintiffs assert Vanesse provided services to New England Development for a Portland, Maine project through New England Development’s silent partner, Packard Development while Vanesse also was acting as the Board’s traffic consultant. Plaintiffs maintain that the relationship between Vanesse and New England Development constitutes a conflict of interest which prevents Vanesse from rendering an unbiased opinion.
Defendants contend plaintiffs’ claim fails as a matter of lawbecause the Conflict of Interest Lawpertains to municipal employees and Vanesse is not a municipal employee under the statute. This court reluctantly agrees. The Conflict of Interest Law, G.L.c. 268A, §19, provides liability for: “A municipal employee who participates as such an employee in a particular matter in which to his knowledge he, his immediate family or partner, a business organization in which he is serving as officer, director, trustee, partner or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest.”
Defendants argue Vanesse is a private corporation and corporations are not municipal employees under the statute. Because neither the statute nor appellate courts have defined “municipal employee” under G.L.c. 268A, this court looks to the State Ethics Commission’s interpretation of “municipal employee” for guidance. See Scaccia v. State Ethics, 431 Mass. 351 (2000) (noting that “the commission’s considerable expertise regarding [G.L.c. 268A] ... is entitled to some deference”); Saccone v. State Ethics Commission, 395 Mass. 326 (1985) (“deference should be given to long consistent administrative interpretations of an agency’s governing statute”). The State Ethics Commission “has long recognized that a . . . contract between a [state or municipal government entity] and a corporation will not render the corporation a ‘[government] employee.’ ” State Ethics Advisory Opinion EC-COI-89-6 (Feb. 8, 1989). “The Commission has followed the Attorney General’s previous view that ‘the provisions of the conflict of interest statute are primarily directed at the activities of individuals . . .’ ” State Ethics Advisoiy Opinion EC-COI-92-6 (Mar. 12, 1992), quoting Attorney General Conflict of Interest Opinion No. 852 (1978). Applying this definition to the present case, Vanesse’s contract to provide consulting services to the Board does not render it a municipal employee under G.L.c. 268A.[2]
Defendants’ Motion for Summary Judgment as to Count IV is allowed. Plaintiffs’ Cross motion for Summary Judgment as to Count IV is denied.
B. Is There a Genuine Issue of Material Fact Regarding the Open Meeting Law Claim?
Defendants argue that Counts V through VIII, alleging violations of the Open Meeting Law, G.L.c. 39, §§23A-23C, should be dismissed because the exclusivity provision of G.L.c. 40A, §17 bars such action.
In relevant part, G.L.c. 40A, §17 provides: “The foregoing remedy shall be exclusive notwithstanding any defect of procedure or of notice other than notice by publication, mailing or posting as required by this chapter, and the validity of any action shall not be questioned for matters relating to defects in procedure or of notice in any other proceedings except with respect to such publication, mailing or posting . . .”
Defendants rely on Iodice v. Newton, 397 Mass. 329 (1986), and Elder Care Servs., Inc. v. Zoning Board of Appeals of Hingham, 17 Mass.App.Ct. 480, 482 (1984), to support their contention that the application of the Open Meeting Law is barred by the exclusivity-provision of G.L.c. 40A, §17. In each of those cases, the respective courts held that Section 17 is the exclusive remedy for zoning appeals based on claims that the Board exceeded its authority. In Iodice, the plaintiffs failed to file their appeal within the time limitations of G.L.c. 40A and the court held that they could not bring an action for declaratoiy relief under G.L.c. 231 because an attack on the ordinance amounted to an attack on the Board of Appeals’ decision. Plaintiffs in Iodice were seeking to circumvent the appeals process provided in G.L.c. 40A, §17 *385 by bringing a declaratory action to invalidate the ordinance itself.
In contrast, in the present case, the plaintiffs are not seeking to invalidate the ordinance. Rather, they attack the process in which the decision of the Board was made, claiming the Board violated the Open Meeting Law. Moreover, courts have consistently applied the Open Meeting Law to zoning deliberations and decisions. See Benevolent & Protective Order of Elks, Lodge No. 65 v. Planning Board of Lawrence, 403 Mass. 531 (1988); Cardwell v. Board of App. of Woburn, 61 Mass.App.Ct. 118 (2004); Yaro v. Board of Appeals of Newburyport, 10 Mass.App.Ct. 587 (1980). Therefore, this court finds G.L.c. 40A, §17 does not bar plaintiffs’ Open Meeting Law claims.
The Open Meeting Law prohibits a quorum of a governmental body from meeting “in private for the purpose of deciding or deliberating toward a decision in any matter. ..” G.L.c. 39, §23B. The purpose of the law is to enable public access to “decisions made by its public officials and to the way in which decisions are reached.” Foudy v. Amherst-Pelham Regional School Comm., 402 Mass. 179, 184 (1988). The law seeks to provide access by “eliminat[ing] much of the secrecy surrounding the deliberations and decisions on which public policy is based.” Ghiglione v. School Comm. of Southbridge, 376 Mass. 70, 72 (1978). The court may at its discretion invalidate any action taken in violation of the Open Meeting Law. G.L.c. 39, §23B; Benevolent & Protective Order of Elks, Lodge No. 65 v. City Counsel of Lawrence, 403 Mass. 563, 565-66 (1988).
Defendants further argue that even if the exclusivity provision of G.L.c. 40A, §17 does not bar action under the Open Meeting Law, the claim fails on the merits. The threshold question is whether the plaintiffs filed their claims under the Open Meeting Law within the statute of limitations. General Law c. 39, §23B provides that an action taken in violation of the Open Meeting Law may be invalidated “provided that such complaint is filed within twenty-one days of the date when such action is made public.” Defendants argue the plaintiffs failed to comply with the time requirement because the last Board meeting regarding the development at issue took place on October 7, 2003 and the plaintiffs filed their complaint on December 12, 2003.
Plaintiffs allege the Board met in secret sometime between October 7, 2003 and November 24, 2003. Plaintiffs’ assertion rests on the fact that the October 7th meeting minutes reflect the Board’s approval of a site plan for the North Site for a mixed-use development whereas the order dated November 24, 2003 reflects that the property in question is zoned for commercial use. The Board held no public meeting in which it voted to change the use. Plaintiffs contend the Board held an undisclosed meeting sometime between October 7, 2003 and November 24, 2003, wherein the defendants amended their October 7, 2003 decision.
Plaintiffs offer the transcript of the vote and the minutes of the Board to demonstrate that there was a change in the approval of the North Site plan as a mixed-use development to a commercial development. A finder of fact could draw an inference that such a change could only occur through an undisclosed meeting. As stated above, the statute of limitations for the Open Meeting Law runs when the alleged violation is made public. G.L.c. 39, §23B If an undisclosed meeting took place, the alleged violation was not made public until the Board issued the order on November 24,2003 and, therefore, the plaintiffs timely filed their complaint on December 12, 2003. Because there is a genuine issue of material fact as to whether the Board held a secret meeting, summary judgment is inappropriate. Therefore, both the plaintiffs’ and the defendants’ motions for summary judgment on Counts V through VIII are denied.
C. Are Either of the Parties Entitled to Judgment as a Matter of Law Regarding the Notice Claim?
Plaintiffs contend that because the defendants provided notice to the Wildwood Condominium and the Liberty Commons Condominium Associations, not the individual unit owners, such notice is insufficient. Even if the notice was insufficient, the plaintiffs must show not only a lack of notice but also that they were prejudiced by it. Chiuccariello v. Building Commissioner of Boston, 29 Mass.App.Ct. 482, 486 (1990) (“Successful attack on a board’s decision, in the face of actual notice but in the absence of statutorily required notice, should be restricted to circumstances where prejudice is demonstrated”). In the instant case, the individual plaintiffs were not prejudiced by the alleged lack of notice because they had actual notice as evidenced by the attendance of some of the plaintiffs at each of the meetings. Defendants’ Motion for Summary Judgment on Count IX is allowed.
D. Are the Parties Entitled to Judgment as a Matter of Law for the Due Process Claim?
Plaintiffs contend their due process rights were violated because members of the Board asked one of the parties in interest to “hurry up” at the September 2, 2003 hearing. Plaintiffs also claim that experts opposing the development at issue were not provided ample time to testify. There is no evidence in the summary judgment record to support these claims. Even if plaintiffs’ allegations are true, the Board’s actions do not violate due process.
General Law c. 40A, §17 “affords adequate administrative and judicial remedies for errors in administration of the zoning law. Due process or equal protection claims are very seldom the means to seek review of the actions of land use agencies, with the door only slightly ajar for relief in ‘truly horrendous *386 situations.’ ” Wyman v. Zoning Board of Appeals of Grafton, 47 Mass.App.Ct. 635 (1999), quoting Freeman v. Planning Board of West Boylston, 419 Mass. 548, 560-61 (1995).
The actions of the Board simply do not rise to the level of truly horrendous conduct; they gave four of the plaintiffs ample opportunity to speak at the hearings, therefore, their due process rights were not violated. Defendants’ Motion for Summary Judgment as to Count X is allowed.
IV. Is the Special Permit Decision Deficient as a Matter of Law?
Plaintiffs cross move for summary judgment as to Count I, alleging the Board’s special permit decision is deficient because parts of the decision mimic the special permit criteria of the Leominster zoning ordinance. Plaintiffs rely on Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 295 (1972), and Wolfson v. Sun Oil Co., 357 Mass. 87, 89 (1970).
In Josephs, the Supreme Judicial Court held that “the board, when granting a special permit, must set forth ‘clearly the reason or reasons for its decisions’ that applicable statutory and by-laws standards have been met.” Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 295 (1972). “(S)pecific findings are necessary to satisfy the requirements for granting a variance are not met by a mere repetition of statutory words.” Wolfson v. Sun Oil Co., 357 Mass. 87, 89 (1970).
While it is true that the Board’s decision recites the language in the ordinance, the Board also supported its decision with specific findings and reasons explaining how criteria for granting the permit were met.
In addition, “detailed conditions imposed by [a] zoning board do double duty as finding that the special permit applied for might be exercised in harmony with the general purposes and intent of the zoning by-law.” Tebo v. Board of Appeals of Shrewsbury, 22 Mass.App.Ct. 618, 621 (1986). Here, the Board set forth specific conditions of approval, demonstrating that its decision to grant the special permit was guided by applicable statutory and by-law standards.
Therefore, plaintiffs are not entitled to judgment as a matter of law on Count I and the motion is denied.
ORDER
It is therefore ORDERED that Defendants’ Motion for Summary Judgment as to Counts II, III, IV, IX and X be ALLOWED and that Defendants’ Motion for Summary Judgment as to Counts I, V, VI, VII and VIII be DENIED.
Plaintiffs’ Cross-motion for Summary Judgment as to Counts I; and, 1V-VIII be DENIED.

Although Lochner’s traffic study comes to the opposite conclusion, that is not an issue for this court to decide at this time.

defendants also claim that the exclusivity provision of G.L.c. 40A, § 17 bars plaintiffs’ claim that defendants violated the Conflict of Interest Law, G.L.c. 40A, §17. Since plaintiffs’ claim fails as a matter of law, this court need not address whether the exclusivity provision bars the Conflict of Interest claim.