Nickerson, Gary A., J.
The plaintiff, Claudia Boespflug, trustee of the Boespflug Realty Trust (“Boespflug”), initiated this zoning appeal to annul the Truro Board of Appeals’s (“Board”) grant of a special permit. The permit allows co-defendants, Community Housing Resource, CHR Truro Homes, Inc., and Edward Malone (collectively the “Applicant”) to construct fourteen affordable rental units in a specially designated “Affordable Rental Housing Overlay District.” Boespflug’s property abuts the proposed development. By their motion to authorize summary adjudication,[3] the parties agreed to submit the case for decision on the papers, including the various affidavits, and further agreed to narrow the dispute to four issues, all related to whether the Board exceeded its authority in issuing a special permit.
BACKGROUND
Boespflug owns several properties that abut an Affordable Rental Housing Overlay District (hereinafter “Town Property” or “Overlay District”) owned by the Town of Truro. Boespflug’s property benefits from a water rights easement that burdens the Town Property. Boespflug maintains a well and pipes on the Town Property and the well is recognized as a Public Water Supply because it serves more than twenty people per day in season. (Joint Statement of Facts, Parg. 5-9.) The proposed project will not physically interfere with the well and pipes, but Boespflug contends that, absent proper safeguards, the project will contaminate her water supply.
In August 2005, the Applicant applied for a special permit to construct fourteen affordable rental units in the designated Overlay District. The Board granted the application for a special permit on September 8, 2005. (Joint Statement of Facts, Parg. 15-17.) In granting the special permit, the Board found that “the plan is in keeping with the requirements of §30.6 of the Zoning Bylaw and for the purposes of the overall Bylaw, and . . . said Permit is not substantially detrimental to the neighborhood.” (Decision of the Board of Appeals of Truro, Sep. 8, 2005.) The Board included three general conditions in its grant, including a requirement that the Applicant abide by the laws and regulations promulgated by the Board of Health, the Department of Environmental Protection, the Town of Truro, and the Commonwealth.
Section 30.6 of Truro’s Zoning Bylaws, as amended and in effect at the time the special permit was granted, designates the purpose for building in the Overlay District. The Board must adhere to §30.6’s requirements in evaluating applications. Section 30.6.B sets forth five requirements:
30.6.B(1) Overlay: The Affordable Rental Housing District is superimposed over a portion of the Residential District established by the Town of Truro Zoning Bylaws and the provisions related to the Affordable Rental Housing District are in addition to all other provisions set forth in the Truro Zoning Bylaws. In a conflict between the underlying district and the Overlay District, the provisions in the Overlay District shall prevail.'
30.6.B(2) Coverage. To qualify for inclusion in the Affordable Rental Housing Overlay District, the proposed buildings and pavement may not cover more than 25% of the area of the entire parcel.
30.6.B(3) Parking. Parking design shall comply with §30.9, Parking, herein. Driveways shall have a minimum width of fourteen (14) feet, and shall be *548 maintained free of vegetation to that width and to a height of fourteen (14) feet at all times. Driveways are to be permeable and shall be maintained with a level surface of at least four (4) inches of blue stone or T-base equivalent at all times.
30.6.B(4) Setbacks. Each residential building within the Affordable Housing Overlay District shall be set back at least fifty (50) feet from the nearest existing established road and at least fifty (50) feet from any other residential building in the district. Non-residential structures, such as maintenance sheds, shall be set back at least seventy-five (75) feet from the nearest existing established road and at least seventy-five (75) feet from the nearest residential structure within the district.
30.6.B(5) Density: To qualify for inclusion in the Affordable Rental Housing Overlay District, a development may have no more than twelve (12) dwelling units; however the Board of Appeals may grant a special permit which will allow no more than four (4) additional dwelling units. Single-unit buildings are not allowed.
Boespflug contends that prior to the issuance of the special permit under §30.6, the Planning Board was required to, and failed to, conduct a proper site plan review, per §70 of Truro’s Zoning Bylaws.[4] Section 70 defines the scope, purpose, and procedures for conducting a site plan review. Section 70.5 specifies twenty-five informational items that must accompany a site plan application. Section 70.8.A describes the procedure the Planning Board and Board of Appeals must follow when a proposed development requires a site plan review and a special permit: “For those projects which require a special permit(s) from the Board of Appeals, the Planning Board shall forward its findings and recommendations to the Board of Appeals.” Truro Zoning Bylaw, §70.8.A.
Boespflug contends that the ultimate findings used to grant the special permit were premised on factually incorrect or insufficient information, the deficiency of which would have been revealed during site plan review. Boespflug contends that the Board’s approval of the application for a special permit constituted an unauthorized exercise of power because the Board failed to adhere to its Zoning Bylaws by not completing a proper site plan review. The defendants contend that site plan review is not a prerequisite to the issuance of a special permit under §30.6.
DISCUSSION
This court reviews the grant of the special permit de novo. Bicknell Realty Co. v. Bd. of Appeal of Boston, 330 Mass. 676, 679 (1953) (“[T]he judge makes his own findings of fact, independent of any findings of the board, and determines the legal validity of the decision of the board upon the facts found by the court”). While a court may show some deference towards a zoning board that denies a special permit, the court accords no deference to the reasons and findings of a zoning board’s grant of a special permit. Vazza Properties, Inc. v. City Council of Woburn, 1 Mass.App.Ct. 308, 311-12 (1973) (distinguishing the standard of review used to evaluate the denial of a special permit versus the grant of a special permit). Therefore, the Court must “make an affirmative finding as to the existence of each condition of the statute or by-law required for the granting of the . . . special permit.” Id. at 311.
Upon conducting this de novo review, the court shall “annul [the board’s] decision if [it is] found to exceed the authority of such board or special permit granting authority or make such other decree as justice and equity may require.” G.L.c. 40A, §17. This language permits the court to affirm, annul, or remand a matter to a special permit granting authority. Roberts-Haverhill Assocs. v. City Council of Haverhill, 2 Mass.App.Ct. 715, 718 (1974). A remand enables a board to remedy deficient findings, Cordon v. Zoning Bd. of Appeals of Lee, 22 Mass.App.Ct. 343, 344 (1986), or reconsider some condition or aspect of its decision that it failed to consider in granting the special permit. Josephs v. Bd. of Appeals of Brookline, 362 Mass. 290, 300 (1972).
General Laws c. 40A, §9 provides the statutory framework for granting or denying special permit applications. “Special permit procedures have long been used to bring flexibility to the fairly rigid use classifications of Euclidean zoning schemes by providing for specific uses which are deemed necessary or desirable but which are not allowed as of right.” SCIT, Inc. v. Planning Bd. of Braintree, 19 Mass.App.Ct. 101, 109 (1984) (citations omitted). General Laws c. 40A, §9 requires the Board, to make “a detailed record of its proceedings” and to “set[ ] forth clearly the reason for its decision.” The Supreme Judicial Court noted that “[i]t is a strong protection against hasty, careless, or inconsiderate action to require a public board to put in writing a full statement of its reasons for action.” Aldermen of Newton v. Maniace, 429 Mass. 726, 732 (1999), quoting Bradley v. Bd. of Zoning Adjustment of Boston, 255 Mass. 160, 173 (1926). The filing of a decision without findings has been scorned as “an expensive, time consuming, empty gesture requiring a remand.” Aldermen of Newton v. Maniace, 45 Mass.App.Ct. 829, 833 (1998). A “mere repetition of statutory words” fails to satisfy the requirements of G.L.c. 40A, §9. Josephs v. Bd. of Appeals of Brookline, 362 Mass. at 295. “[T]here must be set forth in the record substantial facts which can rightly move an impartial mind, acting judicially, to the definite conclusion reached.” Gaunt v. Board of Appeals of Methuen, 327 Mass. at 381. An incomplete filing requires a court to proceed on one of two paths. First, a court could annul the Board’s decision. Gaunt v. Bd. of Appeals of Methuen, 327 Mass. 380, 381-82 (1951). Alternatively, a court could remand this decision to the board for findings consistent with the court’s opinion. Gordon v. Zoning Bd. of Appeals of Lee, 22 Mass.App.Ct. at 344.
*549 Boespflug’s allegations require the Court to examine the legal standards that govern the relationship between site plan and special permit reviews. In reviewing this relationship, the Court must interpret Truro’s Zoning Bylaws before determining whether the Board acted within the scope of its authority.
The court employs “ordinary principles of statutoiy construction” to clarify ambiguities in bylaws. Framingham Clinic, Inc. v. Zoning Bd. of Appeals of Framingham, 382 Mass. 283, 290 (1981). If ambiguities exist, the court must reasonably construe the “objects sought to be obtained and the general structure of the ordinance as a whole.” Haynes v. Grosso, 353 Mass. 731, 734 (1968) (resolving unclear language in a zoning bylaw). The court resolves ambiguities by finding a “sensible” meaning within this framework. Selectmen of Hatfield v. Garvey, 362 Mass. 821, 826 (1973).
Zoning bylaws enjoy a presumption of validity and a court should show deference to a local board’s interpretation of its own bylaws. Murray v. Bd. of Appeals of Barnstable, 22 Mass.App.Ct. 473, 479 (1986). The Massachusetts Court of Appeals noted that a “by-law, by utilizing separate chapters, clearly differentiates between processing of applications for site plan review and applications for special permits.” Osberg v. Planning Bd. of Sturbridge, 44 Mass.App.Ct. 56, 59 (1997). In this case, neither party has supplied any explicit evidence in the form of written opinions or established practices regarding the Zoning Board’s interpretation of its own bylaws, which could aid this Court’s interpretation.
Site plan review procedures vary widely across municipalities, however, the judiciary has provided some guidelines with respect to a board’s power to conduct site plan reviews. Prudential Ins. Co. of Am. v. Bd. of Appeals of Westwood, 23 Mass.App.Ct. 278, 282-83 (1986) (distinguishing a site plan review from a special permit review). A site plan review provides for a “regulation of a use rather than its prohibition . . . contemplating primarily the imposition, for the public protection, of reasonable terms and conditions.” Y.D. Dugout, Inc. v. Bd. of Appeals of Canton, 357 Mass. 25, 31 (1970). A board may require an applicant to satisfy a site plan review as part of its special permit application, but the site plan requirement cannot provide the board with “unrestrained power." Auburn v. Planning Bd. of Dover, 12 Mass.App.Ct. 998, 999 (rescript), quoting MacGibbon v. Bd. of Appeals of Duxbury, 356 Mass. 635, 638 (1970).
“(T]he local board need not be held to as demanding a standard of reporting of the factual and legal underpinnings of their approval of a site plan . . . [because] written explanations of each affirmative determination would produce in each case of a site plan review a document of burdensome length.” Bowen v. Bd. of Appeals of Franklin, 36 Mass.App.Ct. 954, 955 (1994) (rescript). Thus, the Board need not make detailed, individual, affirmative findings related to site plan reviews, unless such records and findings are required by the town’s own zoning ordinance. In contrast to site plan reviews, when the Board grants a special permit, however, such grants must be supported by detailed, individual, affirmative findings. G.L.c. 40A, §9.
The Truro Bylaws at Section 30.6.B(1), states that the Overlay District remains subject to “all other provisions set forth in the Truro Zoning Bylaws.” In addition, §30.8.C (“Special Permits”) of the Truro Zoning Bylaws indicates that the approval of a Special Permit must rest on the findings of the Board “that the proposed use is ... in harmony with the general public good and intent of this bylaw. The approval shall be subject to any other applicable provisions of this bylaw and the Board may impose conditions, safeguards, and limitations on time and use, which in the Board’s opinion are necessary to comply with the intent and purpose of this bylaw.”
Site plan review is established by §70 of the Truro Bylaws. The initial provisions of §70 (e.g. §70.3) may be read to suggest that site plan review is a process independent of other zoning provisions. Nonetheless, §70.8 tells us that, in instances where the Board of Appeals must rule on a special permit application, “the Planning Board shall forward its findings and recommendations to the Board of Appeals.” Section 70.8 mandates the completion of site plan review prior to the issuance of a special permit under §30.6. The permissive and regulatory nature of site plan review dovetails with the Board of Appeals mandate under §30.8 to consider conditions and safeguards in issuing a special permit.
This Court disagrees with the defendant’s assertion that the Planning Board did not need to complete a site plan review. (Defendant’s Rebuttal Memorandum of Law, II.3.a.) The proposed housing units are a new use for the site which triggers the need for more than five parking spaces and has the potential for detrimental impact on the Boespflug properly. Pursuant to §70.2.A(3),[5] this Court finds that site plan review was required in this instance. The proper remedy is to remand this matter to the local boards. The Applicant shall submit materials to the Planning Board in accordance with §70. The Planning Board shall conduct a proper site review culminating in a written decision per §70.7.B.
The Board of Appeals needs to consult the Planning Board’s findings as to site plan review. The Board of Appeals must respond to the concerns of Boespflug to the extent that the Board finds a legitimate basis in fact for some or all of the concerns and a need to address such concerns under the many facets of site plan review. The Board’s decision of September 8, 2005 is altogether too summary in nature and fails to display a considered review of the interests set forth in the Truro Zoning Bylaws and the legitimate concerns of Boespflug. In particular, the interests enu *550 merated in §§70.6B.3 and 4 require special consideration in the context of the facts at hand.
ORDER
For the reasons stated, the decision of the Truro Board of Appeals is VACATED, and the matter is REMANDED for further proceedings before the Board consistent with this opinion.

The Court granted the “Joint Motion to Authorize Case Stated Summary Adjudication” on October 13, 2006.

The Truro Zoning Bylaws reference a “Planning Board” and a “Board of Appeals.” This decision uses the term “Board” to refer to the “Board of Appeals” because it granted the special permit at issue here. Whenever the Court needs to delineate between these two boards in a particular paragraph or section, it shall do so by referring to their full names.

Truro Zoning Bylaws, §70.2.A(3) subjects developments to a site plan review when: “Any construction, site improvements, new uses in existing structures, or developments which contain new processes not normally associated with the existing use and which result in changes in traffic circulation and or storm water drainage; significant detrimental impact on adjacent property, or which trigger the need for five (5) or more additional parking spaces under the standards of §30.9 of this Zoning Bylaw.”