NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-855                                        Appeals Court

BUCCANEER DEVELOPMENT, INC. vs. ZONING BOARD OF APPEALS OF LENOX.

No. 14-P-855.

Suffolk.     April 8, 2015. - August 11, 2015.

Present:  Berry, Milkey, & Massing, JJ.

Zoning, Special permit, Board of appeals:  decision.

Civil action commenced in the Land Court Department on January 9, 2008.

After review by this court, 83 Mass. App. Ct. 40 (2012), the case was heard by Dina E. Fein, J., sitting by designation, on a case stated.

Brett D. Lampiasi for the plaintiff.
Jeremia A. Pollard for the defendant.

MASSING, J.  In denying the plaintiff developer's request for a special permit to build a residential retirement community, the defendant zoning board of appeals of Lenox (board) was frank:  "In general, Board members agreed that the proposed project was simply too dense and too out-of-character

with its surroundings."  A judge of the Housing Court, sitting by designation in the permit session of the Land Court, reviewed the board's decision under G. L. c. 40A, § 17, and after a bench trial, including a view of the project site, affirmed the denial of the special permit.  We affirm.

Background.  The plaintiff, Buccaneer Development, Inc. (Buccaneer), seeks to build a residential retirement community for individuals fifty-five years of age and older, consisting of twenty-three single-family townhouses on twenty-three acres of land in the town of Lenox (town).  The parcel, which is located on East Street in a residential zoning district, is adjacent to sixty-eight acres of protected open space to the north and northeast.  It is situated between four single-family homes to the west, on lots ranging from .49 to 2.75 acres, and a 1950s era cul-de-sac development to the east, of seventeen modest single family homes on a total of 8.2 acres.  To the south lies the Cranwell resort and associated properties, including a golf course, mansions, ten condominium units on one-acre lots, and a housing development of thirty-seven units on twenty-one acres. The public high school is located approximately eight-tenths mile north on East Street.

On June 22, 2007, Buccaneer submitted an application for a special permit to the board.[1]  After a series of public hearings, the board voted 5-0 to deny the application on December 12, 2007, and its decision was filed on December 28, 2007.  The decision records the board members' reasons for denying the application.  Citing various subsections of the applicable town zoning by-law (by-law), one member "noted that the proposed development was unduly dense and would be detrimental to the established 'small town' character of the neighborhood," and another stated that "it was neither essential nor desirable to the public welfare at the proposed location."  A third member said "it was not in harmony with the general intent and purpose of the Bylaw, it was not desirable to the public welfare, it would be detrimental to adjacent uses and the established character of the neighborhood, and would exacerbate existing traffic hazards."  The two remaining members "concurred," both noting that the requirements and purposes of the by-law were not satisfied.

Buccaneer sought relief from the board's decision by filing a complaint under G. L. c. 40A, § 17, in the Land Court.  As explained in Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of

---

[1] Under § 6 ("Use Regulations") of the town's zoning by-law, as in effect at the relevant time, a special permit was required to build a retirement community in a residential (R1A) zone.

Lenox, 83 Mass. App. Ct. 40 (2012) (Buccaneer I), on February 1, 2008, the board filed a notice of transfer, and, over Buccaneer's objections, the complaint was ultimately heard in the Housing Court. A judge of the Housing Court affirmed the board's denial of the special permit on September 20, 2010, and a corrected judgment issued on December 14, 2010. Id. at 45. Buccaneer appealed from the Housing Court judge's decision, and we vacated the judgment on the ground that the Housing Court lacked subject matter jurisdiction under G. L. c. 185, § 3A. We remanded the case for redetermination in the permit session of the Land Court, directing that "[t]he case shall be adjudged in light of the town by-law as it existed in December, 2007." Buccaneer I, supra at 45 n.7.

On remand, the Chief Justice of the Trial Court, acting under G. L. c. 211B, § 9, designated the same Housing Court judge who had tried the case as a justice of the permit session of the Land Court, nunc pro tunc to February 1, 2008. The trial judge then issued an order to show cause why she should reopen the case rather than go forward on a "case stated" basis. See Mastriani v. Building Inspector of Monson, 19 Mass. App. Ct. 989, 991 (1985). Buccaneer responded that it did not object to the "case stated" procedure, but reserved its objection to "this Court exercising jurisdiction over this action in the first place." The judge then adopted her prior findings and decision

and, on April 8, 2014, re-entered the judgment affirming the board's[2] denial of the special permit.[3]

Discussion.  In an appeal from a trial court's review of a decision of a municipal board under G. L. c. 40A, "we defer to the factual findings of the trial judge unless they are clearly erroneous.  We review the judge's determinations of law, including interpretations of zoning by-laws, de novo, but we remain 'highly deferential' to a board's interpretation of its own ordinances."  Grady v. Zoning Bd. of Appeals of Peabody, 465 Mass. 725, 728-729 (2013) (citations omitted).

Buccaneer applied for a special permit to build a "retirement community," the minimum requirements for which are set forth in § 9.6 of the by-law, as amended through May 4,

---

[2] See note 5, infra, and accompanying text.

[3] Although these procedures in response to Buccaneer I essentially put Buccaneer in the same posture it was in before we issued that decision, Buccaneer does not challenge the propriety of these procedures in this appeal.  Regarding the designation, we observe that the Chief Justice of the Trial Court by statute possesses "the power to assign a justice appointed to any department of the trial court to sit in any other department of the court, for such period or periods of time as he deems will best promote the speedy dispatch of judicial business."  G. L. c. 211B, § 9(xi), as appearing in St. 2011, c. 93, § 52.  See St. Joseph's Polish Natl. Catholic Church v. Lawn Care Assocs., 414 Mass. 1003, 1004 (1993) (approving use of interdepartmental assignment to cure jurisdictional defect nunc pro tunc).

2006.[4] The proposed project satisfied all of the special provisions set forth in that section. In this regard, we agree with the trial judge's conclusion that "the density of the proposed project is well within the requirements of Section 9.6," and that the board had no basis to deny the special permit under the square footage, acreage, frontage, or setback provisions included in that section.

However, "[e]ven if the record reveals that a desired special permit could lawfully be granted by the board because the applicant's evidence satisfied the statutory and regulatory criteria, the board retains discretionary authority to deny the permit." Davis v. Zoning Bd. of Chatham, 52 Mass. App. Ct. 349, 355 (2001). "[T]he decision of the board can only be disturbed 'if it is based "on a legally untenable ground" . . . or is "unreasonable, whimsical, capricious or arbitrary."'" Subaru of New England, Inc. v. Board of Appeals of Canton, 8 Mass. App. Ct. 483, 486 (1979), quoting from Gulf Oil Corp. v. Board of Appeals of Framingham, 355 Mass. 275, 277 (1969).

Section 6.1.1 of the by-law enumerates five factors the board must consider in determining whether to grant a special permit. Two of these factors are more or less objective: the

---

[4] The by-law was admitted as an exhibit at trial. Given our disposition of this case, we do not address the board's claim that subsequent amendments to the by-law have rendered this appeal moot.

board must find that the proposed use "(d) [w]ill not create undue traffic congestion, or unduly impair pedestrian safety" and "(e) [w]ill not overload any public water, drainage or sewer system" or similar municipal facilities.  The board found "no significant impact to the existing sewer system," and only one member of the board voiced concern that the proposed development "would exacerbate existing traffic hazards."  We reject the board's argument on appeal that it properly based its denial of the special permit on traffic congestion, crash data, or pedestrian safety.  The trial judge specifically found that the evidence did not "support the conclusion that the proposed project would increase traffic congestion or adversely affect pedestrian safety," and the board has not shown that the judge's finding in this regard was clearly erroneous.

Nonetheless, the three other criteria in § 6.1.1 of the by-law specifically require the board to consider more subjective factors and not to grant a special permit unless it finds that the proposed use "(a) [i]s . . . in harmony with [the by-law's] general intent and purpose; (b) [i]s essential or desirable to the public conveniences or welfare at the proposed location; [and] (c) [w]ill not be detrimental to adjacent uses or to the established or future character of the neighborhood."  The board's denial of the special permit was firmly grounded in its assessment that the proposed use failed to meet these criteria.

The facts found by the trial judge provide support for the board's determination.  The judge found that "the proposed project would significantly alter the area in the immediate vicinity" of the project:

> "[T]here now exists 23 acres of open land, abutting 68 acres of similarly open land immediately to the north; the overall impression is one of open space, pasture, and indigenous vegetation.  Were the project to go forward, there would be 23 single family homes, similar in appearance, clustered around a parkway in a manicured setting. . . .  [F]rom the perspective of the immediate neighborhood, the Buc[c]aneer project would represent a[] substantial change in the appearance and 'feel' of the area.  At some point, development in an area reaches a 'tipping point;' the fact that past development has not been viewed as incompatible with the neighborhood does not mean that incremental additional development must always be viewed similarly."

"[P]articularly where the judge conducted a view," we are reluctant to disturb her findings.  Bernier v. Fredette, 85 Mass. App. Ct. 265, 275 (2014).

"We do not consider this to be one of the exceptional cases where a board can be ordered to grant a special permit."  Subaru of New England, Inc. v. Board of Appeals of Canton, 8 Mass. App. Ct. at 488.  This case is unlike MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 639-640 (1970) (board did not provide an adequate statement of its reasons for denying the special permit and committed numerous errors of law in the process), Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 298 (1972) (board's findings inadequate, "amount[ing] to little more

than a mere recitation of the statutory and by-law standards" and "indicat[ing] that the board did not have sufficient evidence before it to make the necessary findings"), or Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 485 (2012) (board failed "to apply its own standards rationally").  Here, the board acted within its discretion, consistent with the facts on the ground, and conformably with the applicable by-law.

Conclusion.  The judgment of the Land Court dated April 8, 2014, is modified by deleting "Planning Board" and inserting "Zoning Board of Appeals" and by deleting "dated December 21, 2007," and inserting "filed December 28, 2007."  As so modified, the judgment is affirmed.[5]

So ordered.

---

[5] Evidently, by the time the final judgment issued, the trial judge had lost sight of the fact, noted in her 2010 findings of fact, that, while the case originally also involved an appeal from the planning board of Lenox's denial of an application for a special permit under a different section of the by-law, "[t]hat aspect of the dispute has been resolved . . . and is not . . . before the court."  The parties appear to have proceeded before us on the assumption that the final judgment is, in fact, an affirmance of the decision of the zoning board of appeals, rather than of the planning board, and we have modified the judgment accordingly.

BERRY, J. (dissenting).  While I recognize full well the broad discretionary powers vested in local zoning boards to grant or deny applications for special permits, and the highly deferential nature of our review of the board's interpretations of its own ordinances, a board's discretion is not limitless, and as applied to this case, I do not accept, and cannot give deference to, the fatally vague and cursory decision of the Lenox zoning board of appeals (board), which, from all that appears, was tantamount to an unbridled and arbitrary conclusion that the board simply did not want this project to move forward. On this record, I find no basis in fact, and thus no support, for the board's denial of the application of Buccaneer Development, Inc. (Buccaneer), for a special permit. Accordingly, I respectfully dissent.

I turn first to the applicable section of the town of Lenox zoning by-law (by-law).  Section 6.1.1 of by-law requires as follows:

> "Before granting a special permit for any use requiring such permit under the provisions of this By-law, the [b]oard [must] find that the proposed use:
>
> "(a) Is in compliance with all provisions and requirements of this Bylaw, and in harmony with its general intent and purpose;
>
> "(b) Is essential or desirable to the public conveniences or welfare at the proposed location;
>
> "(c) Will not be detrimental to adjacent uses or to the established or future character of the neighborhood;

"(d) Will not create undue traffic congestion, or unduly impair pedestrian safety; [and]

"(e) Will not overload any public water, drainage or sewer system . . . ."

The majority seeks to uphold the board's denial of the special permit on the basis of the first three criteria in § 6.1.1 of the by-law, or as the majority writes, the three "more subjective factors." Ante at    .  To this end the majority opinion holds that "[t]he board's denial of the special permit was firmly grounded in its assessment that the proposed use failed to meet these criteria," and that "[t]he facts found by the trial judge provide support for the board's determination."  Ibid.

To the contrary, based on my review of the record, I believe the board's reasoning stood on far more untenable ground.  The board gives us only the following in support of its conclusory denial of Buccaneer's application for a special permit:

"[T]he proposed development was unduly dense and would be detrimental to the established 'small town' character of the neighborhood," "violated the spirit of the Bylaw . . . because it was neither essential nor desirable to the public welfare," "would be detrimental to adjacent uses and the established character of the neighborhood," and "was simply too dense and too out-of-character with its surroundings."

These specious conclusions, which, in my view, consist of merely a summary recitation of the criteria found within § 6.1.1

of the by-law, without citation to any fact, finding, or reasoned analysis, are "legally untenable." Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68, 73 (2003). For me, what is missing from the board's decision, for example, is any explanation or reasoning as to why Buccaneer's proposed project was neither essential nor desirable to the public welfare, or how the project was detrimental to the small town character of the neighborhood, or what aspects of the project would be detrimental to adjacent uses. "When a decision contains conclusions that do nothing more than repeat regulatory phrases, and are unsupported by any facts in the record, we are constrained to conclude that the decision is 'unreasonable, whimsical, capricious or arbitrary,' and therefore invalid." Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 386 (2009) (Wendy's), quoting from Roberts v. Southwestern Bell Mobile Sys., Inc., 429 Mass. 478, 486 (1999). That, in my view, is the correct assessment of the record and the necessary conclusion in this case.

Other reasons offered by the board for denying Buccaneer's special permit stand in direct conflict with the specific findings of the trial judge. For example, as the majority acknowledges, one member of the board stated that the project was "unduly dense." The trial judge, however, specifically

found that "the density of the proposed project is well within the requirements . . . and were density the only issue herein, there would be no basis for denying the special permit."

Even accepting, as I do, the "'peculiar' combination of de novo and deferential analyses," Wendy's, 454 Mass. at 381, involved in the lower court's review of the board's decision, it seems apparent, on this record, that the trial judge gave far too much deference to the board's conclusions. As previously noted, there is an antidevelopment flavor to the board's decision. From all that appears, the reasons provided by the board, unsupported by the evidence, and summarily accepted by the majority, could be read simply to indicate that the board preferred that the land at issue remain undeveloped. Given the speculative nature of the board's rationale, it appears that the trial judge could have, and in my view, was indeed required to, conduct a more exhaustive review of the facts behind the board's stated reasons for denying Buccaneer's application for a special permit.

That is indeed why we have the important judicial function of review under G. L. c. 40A, § 17, so that a trial judge may make independent findings of fact, and then determine whether "the reasons given by the board [had a] 'substantial basis in fact,' [or were, on the contrary,] 'mere pretexts for arbitrary action or veils for reasons not related to the purposes of the

zoning law.'"  <u>Shirley Wayside Ltd. Partnership</u> v. <u>Board of
Appeals of Shirley</u>, 461 Mass. 469, 475 (2012), quoting from
<u>Vazza Properties, Inc</u>. v. <u>City Council of Woburn</u>, 1 Mass. App.
Ct. 308, 312 (1973).

I add that the board's arbitrary denial of Buccaneer's
special permit, in my view, reflects the as-applied vague and
standardless nature of the by-laws at issue.  "[L]ocal by-laws
must provide adequate standards for the guidance of the board in
deciding whether to grant or withhold special permits."  <u>Josephs</u>
v. <u>Board of Appeals of Brookline</u>, 362 Mass. 290, 294 (1972).

Finally, I find troublesome the summary manner in which the
Housing Court judge, i.e., trial judge, sitting by special cross
designation, adopted her prior findings, word for word, without
conducting any further hearing in the permit session of the Land
Court.  Buccaneer expressly reserved objection to the Housing
Court retaining jurisdiction, with the same judge sitting as the
presiding trial judge on remand from this court in <u>Buccaneer
Dev., Inc</u>. v. <u>Zoning Bd. of Appeals of Lenox</u>, 83 Mass. App. Ct.
40 (2012).[1]

It may be that this cross designation procedure between the
Housing Court and the permit session of the Land Court, as in

---

[1] Having preserved this jurisdictional challenge, to be
noted is that Buccaneer did then agree to have the case
presented on the extant record -- not an unreasonable litigation
strategy, I think.

this case, is an emerging intra-court development.  See <u>Skawski</u> v. <u>Greenfield Investors Property Dev., LLC</u>, 87 Mass. App. Ct. 903, further appellate review granted, 472 Mass. 1103 (2015) (holding that, under G. L. c. 185, § 3A, the Housing Court lacked subject matter jurisdiction over the abutters' G. L. c. 40A appeal from the grant of a special permit in a case where the Housing Court judge [coincidentally, the same Housing Court judge as in the instant Buccaneer appeal] sought to have the case administratively transferred from the Housing Court to the Superior Court and also requested cross designation and assignment to the case).

It may be that adopting this practice as a common procedure, designating the Housing Court judge who had initially tried the case, to sit as a special justice in the permit session of the Land Court, is an appropriate common Trial Court transfer vehicle.  Or, it may be that such cross designation should be an exceptional mode for litigation in the permit session of the Land Court.  To be considered perhaps is the specialized judicial function of the Land Court permit session and the clear legislative intent in G. L. c. 185, § 3A, to grant original jurisdiction over these matters only to the permit session of the Land Court or the Superior Court.[2]  These are

---

[2] A number of errors occurred in the handling of this case, which are troubling.  (a) <u>The docket</u>.  The final judgment states

court administration issues which may be beyond the scope of this dissent. And, the standards for this kind of cross designation might be appropriate for review in the Supreme Judicial Court under G. L. c. 211, § 3. But, I emphasize that Buccaneer did preserve its jurisdictional objection. See note 1, supra, and accompanying text.

The majority ultimately determines, see ante at    , that what was, in effect, a "veto" of Buccaneer's special permit is

---

that it was entered on April 8, 2014, but the docket provided to us shows an entry on April 4, 2014, "entering new judgment." No document has been provided to us that would correspond to a judgment entered on April 4. (b) The decision on appeal. In her 2010 decision, sitting in the Housing Court, the trial judge correctly noted that, while the case originally also involved an appeal from the planning board of Lenox's denial of an application for a special permit under a different section of the by-law, "[t]hat aspect of the dispute has been resolved . . . and is not . . . before the court." But, inexplicably, in 2013, sitting by designation in the permit session of the Land Court, in an order for judgment, the judge stated (erroneously), "In reviewing the record, it appears that the parties, this court, and the Appeals Court have all, at various times, misidentified the defendant as the Zoning Board of Appeals. The original pleadings and docket make clear, however, that the named defendants are the Planning Board for the Town of Lenox, and the members thereof. Any references to the defendant as the Zoning Board of Appeals are hereby corrected as scrivener's errors." The judge's 2013 error was carried forward to the final judgment, from which Buccaneer purports to appeal, and which states, "Judgment shall enter in favor of the defendants, affirming the decision of the Planning Board for the Town of Lenox dated December 21, 2007, which denied a special permit to the plaintiff Buccaneer Development, Inc." In fact, Buccaneer did not pursue an appeal from the planning board's decision, which, in any event, does not appear in the record appendix. We have corrected the judge's error in our disposition of this case. See "Conclusion" and note 5, ante.

saved because there was a finding of some sort of "tipping point," calibrated by the judge after a view of the subject property. The majority quotes as follows:

> "[T]here now exists 23 acres of open land, abutting 68 acres of similarly open land immediately to the north; the overall impression is one of open space, pasture, and indigenous vegetation. Were the project to go forward, there would be 23 single family homes, similar in appearance, clustered around a parkway in a manicured setting. . . . [F]rom the perspective of the immediate neighborhood, the Buc[c]aneer project would represent a[] substantial change in the appearance and 'feel' of the area. At some point, development in an area reaches a 'tipping point;' the fact that past development has not been viewed as incompatible with the neighborhood does not mean that incremental additional development must always be viewed similarly." (Emphasis supplied.)

Ibid. The problem with this purported "tipping point"-based analysis is that it is nothing more nor less than a wholly subjective commentary by the G. L. c. 40A reviewing judge that Buccaneer's project would alter the "feel" of the surrounding area. Indeed, the vagary of the word "feel" only reinforces the entirely subjective analysis here, which is not grounded in zoning law or the requirements of G. L. c. 40A review. What does it mean to "feel" a project is not too dense in an area, or, conversely, to "feel" a development project is too dense? What we have here, at the end of the day, is a "tipping point"/"feel." My research has discovered no other case under G. L. c. 40A in which the words "tipping point" or "feel" govern. If the future of special permit reviews were to turn on

such inchoate expression, then G. L. c. 40A appeal and review would be standardless and virtually meaningless to the special permit applicant.

For the foregoing reasons, I would vacate the judgment and remand this matter once again to the Land Court, for an independent review of the board's decision denying Buccaneer's application for a special permit.