[1] The caption of the original complaint filed with the Court identifies the Appellee as the Zoning Board of Review of the Town of Cumberland. This appears to be a typographical error since the record and all other filings, including the body of the complaint, refer to the Zoning Board of Review of the City of Pawtucket.
 DECISION
Osvaldo Rodrigues, ("Rodrigues") Daniel Lopes, and Jose Fonseca, (collectively "Applicants" or "Appellants") bring this appeal from a decision of the Zoning Board of Review of the City of Pawtucket ("Zoning Board," "Board" or "Appellees"). Appellants appeal the denial of their application for a dimensional variance and special use permits to operate a mixed use residential apartment building and house of worship. Section 45-24-69 of the Rhode Island General Laws confers jurisdiction on this Court.
For the reasons set forth below, the Court affirms the decision of the Zoning Board. The applicable Pawtucket Zoning Ordinance ("ordinance") permits an applicant to seek a special use permit to combine a residential use with a commercial use. However, a house of worship is not a commercial use within the meaning of the *Page 2 
ordinance. As such, the Applicants are not entitled to obtain a special use permit to allow them to use the property as both a church and a residence.
 I Facts and Travel
The Applicants own property located at 268-272 West Avenue in the City of Pawtucket, designated as Tax Assessor's Plat 55, Lot 287. The property, which is situated in a `RM' Residential Multi-Family Zone, is currently a non-conforming mixed use residential and commercial property.[2] Appellants filed an initial application seeking a dimensional variance and special use permit to alter the use of a single first floor unit from a beauty salon to a house of worship. The second unit on the first floor is occupied by a retail store. The second floor consists of four residential apartments. Although both residential apartments and houses of worship are permitted uses within the zone, they are not permitted mixed uses. Applicants sought a special use permit to operate both a church and residential apartment units on the property. On August 27, 2007, the Zoning Board voted to deny Applicants' initial application.[3]
Thereafter, on September 27, 2007, Applicants filed another application, which is the subject of this appeal. In the amended application, Appellants seek both a dimensional variance under ordinance § 410-76 and also special use permits under § 410-59(E) and (F) and § 410-60(F). They requested the following: a dimensional variance to permit them to provide fewer than the required number of parking spaces on site; special *Page 3 
use permits under § 410-59(E) and (F) to allow them to utilize off-site and shared parking spaces; and a special use permit under § 410-60(F) to permit them to use the property as a mixed residential-commercial use of apartments and a house of worship. Whereas in the initial application, they retained the retail space, in the second application, they seek to eliminate both the first floor beauty salon and the retail space to use the entire first floor as a house of worship.
The Zoning Board held a duly advertised public hearing on the application on October 29, 2007. At the hearing, Applicants' attorney advised the Board that his clients would agree to condition their approval on limiting the days and hours of operation for the house of worship to Monday, Wednesday and Friday evenings seven to nine at night and one Sunday morning a month from nine to eleven in the morning.
Rodrigues testified on behalf of their application. He indicated that the church had twenty five members, that for over sixteen years, it had been located in another building on the same street as the property in question, and that he purchased the subject property on behalf of the church so the congregants would have their own place to worship. (Tr. 5.) Rodrigues indicated that the proposed limitation on hours was acceptable to him and that neither worship nor group meetings would occur outside those hours. Id. He testified that he had personally spoken to the owners of Tony's Repair and Baris Awning, two neighboring commercial establishments, and that they both agreed to allow members of the church to use their parking spaces. (Tr. 7.) He noted that Applicants submitted copies of letters from Tony's Repair and Baris Awning with the original application, documenting the agreements.Id. Pursuant to a Zoning Board request, dated November 1, 2007, the Applicants supplemented the letters with copies of *Page 4 
draft leases ("lease agreements"). He testified that Barris Awning was located directly across the street from the subject property and that congregants would be permitted to use half of its 100 x 100 foot parking lot. He further testified that the lot at Tony's Repair measured 25.9 x 59 feet. (Tr. 13.)
Rodrigues testified that the house of worship would provide seating for fifty congregants. Under the ordinance, a fifty seat church would be required to provide ten parking spaces, but the Applicants planned to lease a total of sixteen spaces, exceeding the number of spaces required by six. (Tr. 12-13.) He testified that the occupants of the residential apartments located on the second floor parked in the eight spots on the property which are located in the back of the building. (Tr. 15-16.)
Counsel for Applicants rejected a suggestion that his clients attempt to obtain easements for access to the parking spaces, but offered that the Board might choose to require the church to maintain the required parking by lease agreements. (Tr. 7-9.)
Joyce Mullen, a local resident, testified in opposition to the application. She expressed concern that members of the church might park in public spaces on a neighboring street. (Tr. 19-20.) She also presented the Zoning Board with photographs, accepted as exhibits, showing that only six spaces were available on the property due to the location of the dumpster. Id. She pointed out that the agreement with Tony's Auto Body Shop provided for spaces only during the week, not during the weekend and that the location of the body shop was almost two blocks away from the house of worship. Id. Mullen testified that there was less available parking on the street because a damaged building that had been vacant had been repaired and occupied. (Tr. 21-22.) *Page 5 
Prior to the date of the hearing, pursuant to ordinance § 410-112, [4]
the Department of Planning and Redevelopment ("Planning Department") provided the Board with a written advisory opinion pertinent to the application. The Board took administrative notice of this opinion. In its decision letter, dated January 3, 2008, the Zoning Board summarized the testimony of Rodrigues and Mullen and noted the findings of the Planning Department's advisory opinion as follows:
 that the four residential units require 8 parking spaces, which are provided on site. The proposed use for the commercial unit on the ground floor — place of worship — will be active at the same time the residents of the apartments will be at home — evenings and weekends. There is, therefore, no opportunity to share this on-site parking between the two uses and the eight on-site parking spaces cannot count towards the parking available for the proposed place of worship. In addition, the demand for parking will be concentrated on evenings and weekends. (Decision letter at 2.)
The Zoning Board decision notes that the Planning Department found that "[t]here is opportunity for shared parking between commercial uses and the proposed use — place of worship — (sic) because the active times for these two uses are different." Id.
In its decision, the Zoning Board overlooked the undisputed testimony of Rodrigues that the proposed house of worship would have fifty seats and instead quoted from the earlier Planning Department opinion: "[t]he applicant proposes 16 off-street shared parking spaces at 251 West Avenue and 77 Sterry Street. However, the application does not show howmany seats would be provided for the church, so there is not enough information to determine whether 16 spaces is adequate to address the *Page 6 
parking needs." Id. (emphasis added). After noting that the existing use is non-conforming and consists of residential and commercial uses, the Board quotes the Planning Department's conclusion that "The applicant is asking to replace the ground floor with a use that it (sic) more intense than the previous commercial use in terms of parking impacts. Without adequate off-street parking, during service times the surrounding streets will have to absorb all of the parking." Id.
The Board disregarded evidence it received at the hearing, relying solely on the earlier Planning Department's opinion. The Board quoted the Planning Department's finding:
 [w]e therefore recommend that the Board request additional information from the applicant regarding the number of seats that will be provided at this place of worship — so that the determination can be made about whether 16 spaces are adequate — before making a decision. Additionally, we request that a site plan that shows the location of the proposed satellite parking areas, and also shows the layout of the proposed parking areas be submitted to the Department of Planning and redevelopment to determine whether their location is proximate to the proposed use and that the dimensions of the proposed parking are adequate. Id.
The Zoning Board then addressed the request for a dimensional variance under ordinance § 410-76 for a reduction in the number of required number of parking spaces. After stating the standard applicable to dimensional variances called for in § 45-24-41, the Zoning Board went on to find that:
 [b]ased on the facts offered by the applicant at the hearing, and based on the Board's own inspection of the subject parcel, it appears that if a Dimensional Variance is not granted to the applicant, they will not suffer an adverse impact amounting to more than a mere inconvenience since the record is absent substantial and probative evidence that *Page 7 
the relief being sought is reasonably necessary for the full enjoyment of the permitted use. (Decision at 4.)
After denying the application for a dimensional variance, the Zoning Board then considered the requests for special use permits. Again, after reciting the ordinance provision generally applicable to the grant of special use permits, the Zoning Board concluded that:
 [t]he Board finds that based on the facts offered by the applicant through testimony at the hearing and based on the Board's own inspection of the subject parcel, the applicant has failed to offer sufficient probative evidence which substantiates its claim for relief. In the absence of substantial and probative evidence that the proposed use will not danger the neighboring community in any manner, the Board holds that the proposed use and its location on the site will have a detrimental effect upon the public health, safety, morals and welfare of the surrounding area. (Decision at 5.)
The Applicants took a timely appeal from this decision.
 II Standard of Review
Superior Court review of zoning board decisions is governed by § 45-24-69(d), which provides:
 The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;[5] *Page 8 
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"The Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions." Restivo v.Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level." Id. (quoting Lett v.Caromile, 510 A.2d 958, 960 (R.I. 1986)); see alsoCohen v. Duncan, — A.2d — , 2009 WL 1439715 (R.I. May 21, 2009). Rather, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." DeStefano v. Zoning Bd. ofReview of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979).
`"Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance.'" Lischio v.Zoning Bd. of Review of the Town of North Kingstown, 818 A.2d 685, 690
n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981)). In short, a reviewing court may not *Page 9 
substitute its judgment for that of the board's if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill Realty Assocs. v.Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v.Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). In contrast, when a question of law is presented, the Court conducts its review of that issue de novo. Tanner v. Town Council, 880 A.2d 784, 791 (R.I. 2005).
 III Law and Analysis
The Appellants contend that the decision of the Zoning Board, denying its application for zoning relief, is affected by error of law as it was made "upon unlawful procedure" and is "arbitrary or capricious" and "characterized by an abuse of discretion." Section 45-24-69(d). Specifically, Appellants assert that the Zoning Board failed to apply the proper legal standard in considering the dimensional variance. Applicants further contend that the Zoning Board failed to make substantive findings of fact to support its denial of the Applicants' requests for both dimensional variance and special use permit relief. In response, the Zoning Board argues that this Court should affirm its decision and dismiss the appeal. The Board contends that Appellants have failed to satisfy their burden of proof with respect to the application for a special use permit to use the property as a mixed-use house of worship/residence. Specifically, the Board argues that Appellants are precluded by their application from asserting a right to use the property at issue as a mixed-use residential/house of worship.
The General Assembly has delegated authority to the municipalities to establish standards generally applicable to all special use permits to be issued by the various cities *Page 10 
and towns. See section 45-24-42. In Pawtucket, these standards are set forth in ordinance § 410-113, which provides:
 (1) In granting a special use permit, the Board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (a) That the special use is specifically authorized by this chapter and setting forth the exact subsection of this chapter containing the jurisdictional authorization. That the special use is specifically authorized by this chapter and setting forth the exact subsection of this chapter containing the jurisdictional authorization. [sic]
 (b) That the special use meets all of the criteria set forth in the subsection of this chapter authorizing such special use. That the special use meets all of the criteria set forth in the subsection of this chapter authorizing such special use. [sic]
 (c) That the granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the Comprehensive Plan of the City.
 (2) An applicant may apply for, and be issued, a dimensional variance in conjunction with a special use. If the special use could not exist without the dimensional variance, the Board shall consider the special use permit and the dimensional variance together to determine if granting the special use is appropriate based on both the above special use criteria and the dimensional variance evidentiary standards.
"When applying for a grant of a special exception, an applicant must preliminarily show that the relief sought is reasonably necessary for the convenience and welfare of the public." Salve Regina College v.Zoning Board of Review of City of Newport, 594 A.2d 878, 881 (R.I. 1991). "The rule, [is] that satisfaction of a `public convenience and welfare' pre-condition will hinge on a showing that a proposed use will not result in *Page 11 
conditions that will be inimical to the public health, safety, morals and welfare." Nani v. Zoning Board of Review of Smithfield,104 R.I. 150, 156, 242 A.2d 403, 406 (1968). In addition to satisfying the conditions established by § 410-113, [6] applicants must also satisfy the specific criteria applicable to the particular special use permit they seek.
In this case, Applicants sought two special use permits. First, they sought permission for shared parking under § 410-59(F), which provides that:
 [t]he Board may allow shared parking, provided that the type of structures or uses indicate that the period of usage of such structures or use will not be simultaneous (e.g., a church with Sunday services together with a business that is closed on Sundays) and neither use may be a residential use.
They also sought permission to locate shared parking off-site under § 410-59(E), which provides that:
 [t]he Board may permit off-street parking on other off-site lots in any district, provided that such off-site parking is reasonably and safely accessible from the principal use, either by pedestrians or other means, such as tram and/or shuttle service. The Board shall require that appropriate deed restrictions be recorded in the land evidence records.
Next, they requested permission to allow for mixed use residential apartments and a house of worship under § 410-60(F):
 F. Mixed residential/commercial uses.
 (1) The application shall propose occupancy of residential and commercial uses.
 (2) The number of dwelling units permitted shall be based on one dwelling unit per 2,000 square feet of land area.
 (3) The proposed commercial uses shall be those allowed in Article II as personal services, business services, office uses, entertainment, amusement and recreation services, *Page 12 
commercial services, excluding restaurants providing dancing.
 (4) Commercial and residential parking spaces and loading shall be required as per Article IX.
The ordinance provides that mixed residential/commercial uses are permitted by special use permit in the RM zone. Accordingly, Applicants can seek a special use permit to use the property as both a house of worship and a residence if a house of worship qualifies under the ordinance as a commercial use. Section 410-12
Specifically, § 410-60(F)(3), provides that "[t]he proposed commercial uses shall be those allowed in Article II [ § 410-12] as personal services, business services, office uses, entertainment, amusement and recreation services, [and] commercial services, excluding restaurants providing dancing." The ordinance includes a so-called Table of Use Regulations which categorizes twenty one property uses as either: 1. Residential; 2. Assessory uses; 3. Transient residential; 4. Gardening and raising of animals; 5. Public, semi-public, education and recreation uses; 6. Neighborhood commercial uses; 7. General commercial uses; 8. Personal services; 9. Business services; 10. Office uses; 11. Automotive repair services and garages; 12. Auto body repair shop; 13. Miscellaneous repair services; 14. Amusement/recreation services; 15. Automotive uses; 16. Wholesale commercial uses; 17. Public utility uses; 18. Transportation uses; 19. Storage uses; 20. Industrial uses; and 21. Signs. See section 410-12 (.1-.21).
Houses of worship are specifically identified under category five, "Public, semi-public, education and recreation uses." This category is not one of those not identified in § 410-60(F)(3) as a commercial use. The ordinance does not provide for a special use permit for mixed uses other than residential/commercial uses. *Page 13 
When interpreting a zoning ordinance, courts employ the same rules of construction as when interpreting statutes. Ruggiero v. City ofProvidence, 893 A.2d 235, 237 (R.I. 2006) "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." State v. Santos, 870 A.2d 1029, 1032
(R.I. 2005) (quoting Accent Store Design, Inc. v. Marathon House,Inc., 674 A.2d 1223, 1226 (R.I. 1996)); see also Keystone Elevator Co.v. Johnson Wales University, 850 A.2d 912, 918 (R.I. 2004);Driscoll v. Karroo Land Co., 600 A.2d 722, 724 (R.I. 1991). Moreover, when courts examine an unambiguous statute, "there is no room for statutory construction and [the court] [] must apply the statute as written." State v. DiCicco, 707 A.2d 251, 253 (R.I. 1998) (quotingIn re Denisewich, 643 A.2d 1194, 1197 (R.I. 1994)).
The ordinance clearly and unambiguously identifies the property uses that fall within the definition of commercial uses. The ordinance also clearly states that commercial uses can be joined by special use permit with a residential use. There is no provision in the ordinance to allow an applicant to obtain a special use permit to combine a residential use with a use described under the category that includes houses of worship, to wit, public, semi-public, education or recreation uses. The pertinent provisions of the ordinance are clear and unambiguous, and the Court must apply the ordinance as written. Because the ordinance does not list a house of worship as a commercial use, as a matter of law, the Applicants cannot obtain a special use permit to use the property as both a residence and house of worship.
The Court is mindful however, that the Zoning Board did not base its written decision on a determination that a house of worship does not qualify as a commercial use *Page 14 
under the Pawtucket Zoning Ordinance. Nonetheless, a court may uphold the decision of an agency, where, though based on the wrong reasoning, the decision is ultimately correct. See Mesolella v. City ofProvidence, 439 A.2d 1370, 1373 (R.I. 1982). The Court does so in this case. By finding that the Board reached the right result, the Court thus finds that the Board's decision was not clearly erroneous in view of the reliable probative and substantive evidence of the record. The ordinance clearly does not permit a house of worship to occupy the commercial space in a residential/commercial mixed use. The Appellants admit, by their application for zoning relief and in their brief before this Court that the proposed house of worship is not a commercial use. Accordingly, the Court will affirm the decision of the Board as not clearly erroneous.[7]
Although the Court rejects Applicant's appeal and upholds the decision denying the relief sought, the Court takes this opportunity to comment on the Zoning Board decision. The Court finds that the decision was lacking in several respects. The Board's finding that "the applicant has failed to offer sufficient probative evidence which substantiates its claim for relief []" (Decision at 5) was merely conclusory as was its apparent reference to § 410-113(c) when the Board found "that the proposed use and its location on the site will have a detrimental effect upon the public health, safety, morals and welfare of the surrounding area." (Decision at 5.)
The decision was devoid of any discussion or fact finding with respect to any of the factors required under § 410-60(F), relating to the requirements for a mixed residential commercial use; § 410-59(F), relating to the requirements for shared parking; *Page 15 
or § 410-113(1)(a) and § 410-113(1)(b), relating to the requirements for special use permits generally.
The Board failed to meet its duty "to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." Von Bernuth v. ZoningBoard of Review of New Shoreham, 770 A.2d 396, 396-97 (R.I. 2001) (quoting Cranston Print Works Co. v. City of Cranston, 684 A.2d 689, 691
(R.I. 1996)); see Irish Partnership v. Rommel, 518 A.2d 356, 358 (R.I. 1986); see also May-Day Realty Corp. v. Board of Appeals ofPawtucket, 107 R.I. 235, 239, 267 A.2d 400, 403 (1970); § 45-24-61
"[t]he zoning board of review shall include in its decision all findings of fact. . . ."
The Court reminds the Board that our Supreme Court has consistently directed zoning boards "to make certain that zoning-board decisions on [zoning relief] applications [] address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief [] . . . [s]uch a specification of evidence in the decision will greatly aid the Superior Court . . . in undertaking any requested review of these decisions." Sciacca v.Caruso, 769 A.2d 578, 586 (R.I. 2001). Furthermore, "when the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Irish Partnership, 518 A.2d at 359. In assessing the sufficiency of zoning board findings, this Court "must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. *Page 16 
These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible." Irish Partnership,518 A.2d at 358-59 (quoting May-Day Realty, 107 R.I. at 239, 267 A.2d at 403).
Generally, a zoning board's failure to apply the correct legal standard to the relief sought constitutes error of law sufficiently prejudicial to an applicant's rights so as to warrant reversal and remand. See Hugas Corp. v. Veader, 456 A.2d 765, 770 (R.I. 1983) ("trial justice erred in upholding the zoning board's utilization of the variance standard and in not remanding the case for reconsideration under the special-exception standard"); see also Von Bernuth,770 A.2d at 402 (trial justice erred in upholding zoning board's decision where the decision included no discussion of the hardship or reasonable alternative factors under § 42-24-41(d)(2) and where "there is no evidence that the zoning board considered or applied the statutory requirement, given that the statute is not acknowledged in the zoning board's decision").
Here, the Board failed in its duty to resolve evidentiary conflicts or determine the credibility of the witnesses before it. Although the Zoning Board summarized the testimony presented to it, those summations "are not findings but mere mouthings. . . ." of the evidence adduced before the Zoning Board. Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 298, 285 N.E.2d 436 (1972).
On one issue, the Board found that the proposed use would have a more intense parking impact than its current use as a beauty salon and retail store, but failed to articulate a factual basis for this conclusion. Not only did the decision fail to include detailed findings of fact and apply them to the ordinance, but the Board appears to have overlooked evidence presented to it during the hearings. The Board clearly disregarded *Page 17 
undisputed testimony that the proposed house of worship would accommodate fifty seats for congregants and testimony regarding the location and dimensions of the off-site parking spaces. (Decision at 2.) Instead, the Board restates the earlier Planning Department recommendation which notes that the application did not show how many seats would be provided for the church. Id.
Though Rhode Island law generally presents no barrier to zoning board's consideration of another department's recommendation by administrative notice, see Bloch v. Zoning Board of Review ofCranston, 94 R.I. 419, 419, 181 A.2d 228, 228 (1962) (Zoning boards are not bound by the rules of evidence and even hearsay evidence is permissible if probative), where a zoning board administratively notices another department's recommendation, it cannot merely accept the other department's finding of facts coupled with its understanding of how the law applies. In such a circumstance, the zoning board must still disclose and reflect upon the underlying facts and law that lead it to accept such recommendation. See DeStefano, 122 R.I. 241, 247,405 A.2d 1167, 1171 (1979). Zoning boards may not shirk their disclosure obligations by relying on another department's recommendation. Seeid. Furthermore, where the other agency's recommendation or opinion is at odds with the testimony presented before the Zoning Board, it may not simply choose to ignore the testimony before it. Had the Zoning Board rejected such testimony as lacking credibility, it was incumbent upon the Board to say so in its decision. Murphy v. Zoning Bd. of Review ofTown of South Kingstown, 959 A.2d 535, 543 (R.I. 2008).
Additionally, it appears that the Zoning Board members, at least in part, based their rejection of the Applicants' request for dimensional relief on their own inspection of *Page 18 
the site. When a zoning board's decision relies upon one or more board members' special knowledge of a local area or condition, the zoning board's decision reflecting its "special knowledge will not be upheld . . . unless the record reveals the underlying facts or circumstances the board derived from its knowledge of the area." DeStefano v. ZoningBoard of Review of Warwick, 122 R.I. 241, 247, 405 A.2d 1167, 1171
(1979). The record before this Court fails to reveal those underlying facts or specify the manner in which they may have influenced the Zoning Board's decision.
The Board further failed to meet its obligation to set forth its conclusions and reasoning, a duty that is clearly required under state law. As our Supreme Court has clearly stated, a zoning board, "when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the action taken." Sciacca v.Caruso, 769 A.2d 578, 585 (R.I. 2001) (quoting Irish Partnership,518 A.2d at 358) (emphasis added). However, for the reasons set forth above, the Court will uphold the decision as ultimately correct, though based on the wrong reasoning, a court may uphold the decision. SeeMesolella, 439 A.2d at 1373.
 IV Conclusion
For the above reasons, the Court finds that the Zoning Board in its decision of January 3, 2008, though based upon erroneous reasoning, ultimately reached the correct result and thus is not clearly erroneous in view of the reliable probative and substantial evidence of the record as a whole. Substantial rights of the Applicants have not been prejudiced. The Court affirms the decision of the Zoning Board, dated January 3, 2008.
Counsel for Appellees shall, within ten days, submit an appropriate order in accordance with this Court's Decision.
[2] Although mixed use commercial-residential properties are permitted by special use permit in the RM zone, the current mixed use of the property is pursuant to a prior existing non-conforming use, not a special use permit.
[3] The Zoning Board never issued a written decision on the first application. Instead, the Board treated the second application as an amendment to the first and reconsidered the application. Because no final written decision had issued, this reconsideration was not barred by operation of the doctrine of administrative finality or § 410-108.1 of the Ordinance, limiting successive applications for relief. SeeJohnston Ambulatory Surgical Associates, Ltd. v. Nolan, 755 A.2d 799,811 (R.I. 2000).
[4] Section 410-112 provides that whenever the Zoning Board receives an application, it shall ". . . request that the City Planning Commission shall report its findings and recommendations, including a statement on the general consistency of the application with the goals and purposes of the Comprehensive Plan of the City, in writing to the Board within 30 days."
[5] The Court notes that Appellants do not raise any constitutional claims under the religion or equal protection clauses of either the United States or the Rhode Island Constitution. U.S. Const. Amend. 1, 14; R.I. Const. art. 1, secs. 2, 3. The Court further notes that Appellants do not raise a federal statutory claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc —2000cc-5, added by P.L. 106-274, § 1 et seq., 114 Stat. 803 (Sept. 22, 2000) ("RLUIPA"). As such, the Court specifically limits its opinion to the claims asserted before it. See Fisher v. Applebaum, 947 A.2d 248,252 (R.I. 2008); see also Wilkinson v. State Crime LaboratoryCommission, 788 A.2d 1129, 1131 n. 1 (R.I. 2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.").
[6] Under the ordinance, non-conforming uses in residential zones may be changed to uses allowed by special use permit. See
section 410-59(C)(2) ("Residential zones. Within any such zone, a non-conforming use may be changed to a different use which is allowed by special use permit in that zone. In considering the application, the Board shall consider any conditions required for the granting of that special use permit.")
[7] Because Appellants' request for dimensional relief was premised upon its ability to obtain a special use permit to use the property in a mixed residential/house of worship capacity, the Court finds that the application for dimensional relief is moot. As such, the Court declines to make a finding as to whether the documents in the record, entitled "lease agreement," would constitute a "deed restriction" within the meaning of § 410-59(E). *Page 1